441 So.2d 813 (1983)
STATE of Louisiana
v.
John P. CRAWFORD.
No. CR83-404.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1983.
*814 Stephen Everett, Alexandria, for defendant-appellant.
G. Earl Humphries, III, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and YELVERTON, JJ.

FACTS
DOMENGEAUX, Judge.
The defendant, John P. Crawford, was convicted of armed robbery in violation of La.R.S. 14:64 by a twelve person jury. On March 14, 1983, he was sentenced by Judge Robert P. Jackson, to a prison term of twenty (20) years.
On August 27, 1980, between 3:30 and 4:00 P.M., the Convenient Food Store, located at Rapides Station, Rapides Parish, was robbed. A black male perpetrator forced the clerk, at knifepoint, to open the register, from which he took $135.00.
The investigating officers arrived at the scene shortly thereafter. They removed two latent fingerprints from the cash register drawer. These prints were later matched to those of the defendant, John P. Crawford. A car was discovered parked near the food store with the keys in the ignition, the doors unlocked, and the engine warm. Upon investigation, numerous papers with the defendant's name on them were found inside the car. The defendant was arrested on July 8, 1981, in Dallas, Texas, and extradited to Rapides Parish, Louisiana. He was subsequently identified as the robber by the store clerk from a four person photographic lineup. From his conviction of armed robbery the defendant has *815 upon this appeal perfected seven assignments of error.[1]
ASSIGNMENT OF ERROR NO. 1
The defendant alleges that comments made by a prosecution witness were improperly before the jury. Kathy Brocato, the clerk and victim of the robbery, testified as follows:
"Who was in the store at this time?
I was.
And was your husband there?
No, he wasn't.
Would you explain to the Jury what happened?
Okay, I had just got done waiting on a customer, he had left, the defendant come walking in, I didn't (Interrupted)".
Counsel for the defendant objected at this time, arguing that this in-court identification lacked proper foundation. Defendant states that any identification of a defendant in a criminal trial as the perpetrator of the alleged crime must be based upon prior and adequate opportunity to observe the defendant.
The United States Supreme Court in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), concluded that reliability is the lynchpin in determining the admissibility of identification testimony. In analyzing reliability the court should look at the totality of the circumstances surrounding the identification procedure. The Louisiana Supreme Court discussed the Brathwaite decision in State v. Davis, 409 So.2d 268 (La.1982), and in State v. Smith, 418 So.2d 515 (La.1982), wherein it was stated:
"The factors to be considered include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty displayed at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification. The court noted that the standard, after all, is that of fairness as required by the due process clause of the fourteenth amendment. In the final analysis, it must be determined whether under all the circumstances of a particular case there is a very substantial likelihood of irreparable misidentification." At 519.
From Kathy Brocato's testimony it appears that she had ample opportunity to view the defendant for several minutes in broad daylight in a lighted store. Although unable to identify the defendant out of a mug book, she was able to identify the defendant from a photographic lineup of four individuals. There is no allegation that this photographic lineup was improper, and can therefore serve to reinforce the in-court identification by the victim.
Under all the circumstances of the instant case there was not a substantial likelihood of irreparable misidentification. State v. Stewart, 387 So.2d 1103 (La.1980); Smith, supra. As Stewart and Smith both note, the trial judge's determination of admissibility is to be given weight and should not be disturbed unless a preponderance of the evidence clearly mandates the reviewing court to do so. This is not the case here. This assignment lacks merit.
ASSIGNMENTS OF ERROR NOS. 3 AND 4[2]
The defendant argues that statements given by a prosecution witness, Detective William E. Hilton, amounted to an opinion from a non-expert, and therefore were improperly before the jury. The statements at issue were as follows:
"Mr. Hilton, in answer to one of Mr. Everett's questions, I believe, you stated that the reason Mr. Crawford's picture was in the book and these pictures here *816 was the fact that you had found some papers in a car?
Yes, sir.
Was there any other reason why his picture was in ... was shown to Mrs. Brocato?
Yes, he had been ... uh ... his prints had been identified.
And what prints are you referring to?
Those two prints that were introduced as evidence."
An objection was made by defendant and sustained by the trial court. The defendant moved for a mistrial which was denied, but an admonishment was given.
The prints referred to were introduced into evidence as prints taken off the cash drawer at the scene of the robbery. There was no evidence of whose prints they were at the time of introduction. However, the statements by Detective Hilton were not opinion testimony. The statement: "Yes, he had been ... uh ... his prints had been identified," amounted to a hearsay response. Hearsay is identified as an out-of-court statement introduced to prove the truth of its contents. State v. Chaney and State v. Herman, 423 So.2d 1092 (La.1982). The evidence identifying the latent prints[3] with known prints of the defendant had not been introduced at the time the statements were made. However, the statements, by the detective, were not an opinion indicating that the prints taken at the scene were those of the defendant, but indicated that there had been a previous, out-of-court, identification of the prints as those of the defendant. Since this evidence was properly introduced at a later time, there was no prejudice to the defendant, and the trial court's admonition was sufficient.
Even if the admonishment is deemed insufficient, it is recognized that when inadmissible hearsay evidence is improperly introduced at trial, which is merely cumulative of other properly introduced testimony, it is harmless error. State v. Parker, 425 So.2d 683 (La.1982); State v. Vanderhoff, 415 So.2d 190 (La.1982).
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 5
The defendant alleges that the trial court erred in accepting Deputy Sheila Doughtry as an expert in finger-print identification.
The record reveals that Deputy Sheila Doughtry worked with the F.B.I, for fifteen months doing strictly fingerprint comparison and classification. The first three months with the F.B.I, were spent being trained in fingerprint analysis. After leaving the F.B.I., Sheila Doughtry went to work with the State Police. While at State Police headquarters in Baton Rouge, her duties were fingerprint searching and comparison. After two years with the State Police, Ms. Doughtry returned to Alexandria. She worked for the City Police for one year, mostly keeping records; but also some fingerprint work. She then went to work for the Rapides Sheriff's Office, where she has been for the last eight years. On numerous occasions, Ms. Doughtry has been called on to do various fingerprint comparisons for both the Sheriff's Office and the Coroner's Office. Most recently, in 1981, she attended a two-week training course with Baton Rouge experts. She also has been accepted as an expert in fingerprinting by the courts on one other occasion.
The court, after hearing this testimony concerning Deputy Doughtry's experience and qualifications, on both direct and cross-examination, concluded that she was qualified, based on her training and experience, as an expert in the fields for which she was tendered.
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
La.R.S. 15:466.
*817 The courts have consistently held that the competence of an expert is a question of fact to be determined within the sound discretion of the trial judge. His rulings on the qualifications of an expert witness will not be disturbed in the absence of manifest error. State v. Michel, 422 So.2d 1115 (La. 1982); State v. Sherer, 411 So.2d 1050 (La. 1982); State v. Coleman, 406 So.2d 563 (La. 1981); State v. White, 430 So.2d 174 (La. App. 2nd Cir.1983).
In the instant case, Deputy Doughtry was thoroughly questioned by both the State and defendant as to her qualifications and experience. Her testimony was based on this training and experience and the jury could attach whatever significance they saw fit. In light of the apparent training and experience of this witness, in the field of fingerprint comparisons, the trial judge did not abuse his discretion. This assignment is without merit.

DECREE
For the above and foregoing reasons the defendant's conviction and sentence for the crime of armed robbery are affirmed.
AFFIRMED.
NOTES
[1] Defendant assigned as error seven (7) formal assignments, but those numbered 2, 6, and 7 are abandoned. See State v. Dewey, 408 So.2d 1255 (La.1982).
[2] The defendant has combined assignments of error Nos. 3 and 4 for argument in his brief, and since they are mutually related, they will be treated together in this opinion.
[3] A latent print is one lifted from the scene of the crime.