464 So.2d 1116 (1985)
STATE of Louisiana,
v.
Jack SEGURA.
No. CR83-640.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
Writ Denied May 24, 1985.
*1118 Michael Baham, Haik Haik, Etc., New Iberia, for defendant-appellant.
Ralph K. Lee, Asst. Dist. Atty., New Iberia, for plaintiff-appellee.
Before DOMENGEAUX, KNOLL and KING, JJ.
DOMENGEAUX, Judge.
The defendant, Jack Segura, eighteen years of age, was indicted by an Iberia Parish grand jury on June 1, 1982, and charged with the second degree murder of Todd Broussard, in violation of La.R.S. 14:30.1.
On September 29, 1982, following a trial by jury, the defendant was found guilty as charged by a unanimous decision. On November 16, 1982, defendant Segura moved for a new trial, alleging that his own testimony at the original trial on the merits was fabricated and that he had not murdered Todd Broussard. The defendant alleged that a young man named Lancon had committed the murder. The defendant had originally pled self-defense but there was direct evidence which seriously contradicted that claim. During the hearing on defendant's motion for a new trial the defendant maintained that Mr. Lancon stabbed the victim first and then defendant stabbed him again, allegedly under duress.
*1119 Following a lengthy hearing on the motion for a new trial, the trial judge denied said motion. On March 21, 1983, the trial judge imposed a mandatory sentence of life imprisonment. The defendant then appealed his conviction and sentence to this Court. Because the defendant had failed to designate and file assigned errors within the time prescribed by La.C.Cr.P. Art. 844, this Court was precluded from examining the errors raised in defendant's application and was limited to a review for errors patent on the face of the record. State v. Zeno, 322 So.2d 136 (La.1975); State v. Walker, 434 So.2d 1315 (La.App. 3rd Cir. 1983). Following a careful examination of the record pursuant to the provisions of La.C.Cr.P. Art. 920, this Court, finding no errors patent on the record, affirmed the conviction and sentence imposed upon the defendant by the district court. See State v. Jack Segura, 454 So.2d 837 (La.App. 3rd Cir.1984).
Defendant then applied for writ of certiorari to the Louisiana Supreme Court. On September 28, 1984, the State Supreme Court granted the writ and remanded the case to this Court ordering this Court to require defense counsel to file assignments of error in the district court and to subsequently reconsider defendant's appeal.[1]
As a result of that order defendant filed eight assignments of error with the trial court.

FACTS:
On the night of April 24, 1982, defendant Jack Segura and his seventeen year old friend, Todd Broussard, attended a party in New Iberia. The defendant and his friend, Todd, decided to leave the party in order to harvest some marijuana plants at an undisclosed location. Before leaving the residence defendant took a large butcher knife from his host's kitchen.
The defendant and Todd drove to an empty lot near Dauterive's Hospital in New Iberia. Shortly after midnight, defendant appeared on foot at a local drive-in. While there he informed an acquaintance of his that he had just "stabbed somebody". Segura then telephoned his cousin and asked him to come and get him at the drive-in. The cousin arrived shortly thereafter and took Segura to his home. The defendant then told his cousin that he had stabbed a fellow to death. The two telephoned Segura's father and the three of them went to the home of the Assistant Chief of Police of New Iberia. Defendant's father told the Assistant Chief, a family friend, that defendant "may have stabbed someone". Defendant then led the group to an empty lot near Dauterive's Hospital where they found the dead body of Todd Broussard.
An autopsy disclosed that Broussard had multiple stab wounds to the back, chest, and brain. The victim had been stabbed fourteen times. The forensic pathologist testified that death resulted from stab wounds in the lower back which had pierced the victim's liver resulting in severe internal bleeding. At least two of the wounds to the chest and brain were determined to have been post-mortem.
At trial, it was stipulated that the blood stains found on defendant's clothing and shoes were compatible with the victim's uncommon blood type. Although the defendant told police that he had thrown the murder weapon into a drainage culvert, the weapon was never recovered.
The defendant was tried before a jury of twelve persons. He testified in his own behalf, alleging that he had stabbed Todd Broussard in self-defense. However, the defendant was unable to explain how this defense was compatible with the forensic pathologist's determination that the first fatal wounds were inflicted in the victim's back, and that there were at least two post-mortem wounds. The jury returned a unanimous verdict of guilty of second degree murder.
Following his conviction, at the hearing on a motion for new trial, but before sentencing, the defendant admitted to a new version of the circumstances surrounding *1120 Todd Broussard's death. The defendant stated that he was present when Broussard was killed but that Broussard had been stabbed to death by one Hansel Lancon, Jr. He further maintained that Lancon had forced him to inflict a stab wound upon the body of Todd Broussard after Lancon had finished stabbing him, thus accounting for the post-mortem wound(s). Segura alleged that he had perjured himself at trial out of fear for his family's as well as his own safety from threats made by Lancon.
The defendant further testified that Lancon had transported Broussard's body in the trunk of Lancon's car. Authorities obtained a search warrant and thoroughly tested Mr. Lancon's car. The search produced no incriminating evidence.
To substantiate his new allegations of innocence, the defendant sought to introduce at the hearing on the motion for a new trial, the results of voice stress analysis tests and hypnosis performed on the defendant which he alleged proved that he was now being truthful.
Following a lengthy hearing on the motion for new trial wherein the presiding judge allowed testimony as to the voice stress analysis and hypnosis under proffer of proof, the trial judge denied the motion for new trial. At the conclusion of the testimony concerning hypnosis and voice stress analysis, Judge delaHoussaye concluded that the defendant had not established the admissibility or credibility of the results of these procedures. Judge delaHoussaye stated that defendant, who now claimed to have perjured himself before the jury in his original trial, was not now worthy of belief. The search of Mr. Lancon's automobile and his testimony at the hearing apparently left no doubt in the trial judge's mind that Mr. Lancon had nothing to do with Todd Broussard's death. Moreover, the judge also reasoned that, even under the defendant's new version, Jack Segura admitted that he was present when Todd was stabbed to death and that he participated in that stabbing. He therefore denied the motion for new trial.
Defendant appeals both his original conviction and the denial of his motion for new trial alleging eight assignments of error.

ASSIGNMENTS OF ERROR:
1. The trial court erred in admitting into evidence state exhibit 15, a photograph of defendant, as such had no probative value and was prejudicial to defendant.
2. The trial court erred in overruling the defense objection, during re-direct examination of Major Norbert Broussard, to state's questions going beyond the scope of cross-examination.
3. The trial court erred in admitting into evidence photographs of the victim's body showing the stab wounds (exhibits 28, 29, 30) and in allowing the use of a mannequin (exhibit 31) to demonstrate entry and trajectory of the wounds as the prejudicial effect of these outweighed their probative value.
4. The trial court erred in refusing to incorporate in its instructions to the jury, three special jury instructions requested by defense.
5. The trial court erred in denying the motion for new trial on the ground that the evidence at trial was insufficient to support a conviction for second degree murder.
6. The trial court erred in refusing to admit testimony and exhibits at the hearing on the motion for a new trial regarding the Psychological Stress Evaluator tests performed on defendant.
7. The trial court erred in failing to view the videotape of the hypnosis of the defendant, which videotape was admitted into evidence at the hearing on the motion for new trial.
8. The trial court erred in denying the motion for a new trial, on the basis of newly discovered evidence and in order to serve the ends of justice.

ASSIGNMENT OF ERROR NO. 1:
Through this assignment of error the defendant argues that the trial court erred *1121 in allowing into evidence a photograph of defendant taken when he was arrested but in different clothing than he wore at the time of his arrest. The defendant makes no argument in support of this assignment other than to allege that this evidence was cumulative, of no probative value, and introduced only to prejudice the defendant. The defendant makes no showing of how such evidence prejudiced him. Moreover, the evidence appears to have been of great probative value considering defendant strongly alleged that he was drunk and/or drugged when he committed the crime charged. The photo was introduced to demonstrate defendant's appearance shortly after the crime so as to rebut allegations of a drugged or intoxicated condition.
The determination of the use of photographs at trial is largely left to the discretion of the trial judge and his ruling will not be disturbed absent a clear showing of abuse of that discretion. State v. Sawyer, 350 So.2d 611 (La.1977); State v. Barber, 271 So.2d 853 (La.1973). The defendant makes no such showing and from the facts it appears that the photo had significant probative value to substantiate the state's accusation that defendant was not in a drugged or intoxicated condition and to rebut defendant's allegations that he had acted under the influence of drugs and/or alcohol.
For the reasons stated, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 2:
The defendant alleges through this assignment that the trial court erred in allowing the prosecution to ask questions of Major Norbert Broussard on redirect examination which were improper questions on redirect examination because they went beyond the scope of the cross-examination. Defendant makes no argument in brief to support this allegation other than to say it prejudiced the defendant. Assignments of error not briefed are considered abandoned.[2] Moreover, the transcript does not indicate that any objection was made by defense counsel during redirect. A defendant must make a contemporaneous objection and state his reasons. La.C.Cr.P. Art. 841. Thus, this irregularity cannot be raised on appeal as it was not objected to at the time of the occurrence. La.C.Cr.P. Art. 841; State v. Miles, 402 So.2d 644 (La. 1981).

ASSIGNMENT OF ERROR NO. 3:
Through this assignment of error the defendant asserts that the trial court erred in allowing the introduction into evidence of three photographs, exhibits 28, 29, and 30; and a mannequin exhibit No. 31. He maintains that the three photographs of the victim depicting the stab wounds were unnecessary and cumulative as there was much testimony regarding the wounds. The defendant argues that the photographs were gruesome and of little probative value but greatly prejudicial to defendant. The defendant offers no reasoning as to why the mannequin should not have been allowed into evidence other than to assert that it was prejudicial.
When the court is faced with a question of admissibility of allegedly gruesome photographs which defendant asserts will do more to prejudice the jury than help them to reach a fair and impartial decision, the court must "weigh the relative probative value of the proffered evidence against its probable prejudicial effect." State v. Hawthorne, 345 So.2d 1170 (La.1977). See also State v. Denney, 352 So.2d 204 (La. 1977) and State v. Spell, 399 So.2d 551 (La.1981). As a general rule, such a determination is left to the sound discretion of the trial judge who can best decide whether such evidence has a proper place in the jury's understanding of the issues. The trial judge's ruling in these matters will not be disturbed absent a clear showing of abuse of his discretion. State v. Sawyer, supra; State v. Barber, supra. Here, the photographs were introduced during the testimony of the forensic pathologist who *1122 performed the autopsy on the victim. The photographs were taken after all the blood had been removed and were taken to depict the location, size and number of stab wounds on the body. The court, in order to determine the usefulness of the photographs, questioned Dr. Trahan outside the presence of the jury. The doctor testified that he felt the photographs and the mannequin would be very helpful to him in explaining to the jury the trajectory and time sequence of the wounds. As defendant was arguing self-defense this evidence was of extreme importance in demonstrating that the first wounds, which were fatal, were inflicted in the back.
Thus the photographs were used to establish the location, number, sequence and severity of the wounds inflicted on the victim, as well as the identity of the victim. The mannequin aided the doctor by giving a three dimensional simulation of the sequence and manner in which the wounds were inflicted. It appears from the record that the photographs' and mannequin's probative values far outweighed their prejudicial effects, and while the photos are not pleasant, they are not so gruesome as to unduly prejudice the jury. There appears to be no abuse of discretion by the trial judge.
For the reasons stated above, these assignments are without merit.

ASSIGNMENT OF ERROR NO. 4:
Through this assignment the defendant complains that the trial judge improperly refused to give three special jury instructions requested by defendant concerning (1) an explanation of the responsive verdicts; (2) an explanation of the defense of self-defense and the State's burden of proof; and (3) an explanation of a drugged or intoxicated condition as that relates to specific intent.
It is apparent from the record that the trial judge's instructions to the jury included everything mentioned in defendant's requested special charges. Defendant makes no showing that the judge's charges excluded any of the elements contained in the requested charges.
La.C.Cr.P. Art. 802 requires that the trial judge charge the jury as to the law applicable in the case; and La.C.Cr.P. Art. 807 which governs special requested charges provides in pertinent part:
"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
The trial judge's general charges to the jury included a thorough explanation of the responsive verdicts; a thorough explanation of the law as applicable to selfdefense and the state's burden of proof; as well as a thorough explanation of how a drugged or intoxicated condition affects and relates to specific intent. Thus the judge was not required to give the defendant's requested special charges which were of the same effect as the general charges. It is well-settled that requested charges which are already substantially given and covered by the trial judge's general charge are properly refused. C.Cr.P. Art. 807; State v. Simmons, 422 So.2d 138 (La.1982).
For the reasons stated above, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 5:
The defendant asserts through this assignment of error that the trial court erred in failing to order a new trial on the grounds that the evidence at trial was insufficient to support a conviction of seconddegree murder. It appears that defendant has failed to brief this assignment and it should therefore be considered abandoned.[3] However, considering that defendant has somewhat intertwined this allegation in discussing other assignments of error, this allegation will be addressed.
First, it should be noted that there was both direct and circumstantial evidence *1123 presented in the court below. As such, the test to be applied on review to determine whether the evidence is sufficient to support a conviction under Jackson v. Virginia,[4] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) is:
"[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See State v. Guillot, 389 So.2d 68 (La.1980).
The defendant was charged with second degree murder, a violation of La.R.S. 14:30.1.
"Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm;..."
Thus the State was required to prove (1) that Jack Segura did in fact kill Todd Broussard; (2) that Segura acted with the specific intent to kill Broussard or to inflict great bodily harm upon him; and (3) that defendant did not act in self-defense.
"In a homicide prosecution where the defendant claims self-defense, the state must prove beyond a reasonable doubt, that the homicide was feloniously committed and was not perpetrated in selfdefense. State v. Hicks, 395 So.2d 790 (La.1981)." State v. Edwards, 420 So.2d 663 (La.1982).
The evidence and testimony of record leave no doubt that defendant did in fact kill Todd Broussard. Even the defendant himself admitted under oath that he killed Todd Broussard.
Defendant claimed that he did not act with the specific intent to kill or inflict great bodily harm but asserted instead that he was in a drugged and/or intoxicated condition. Apparently the jury was not convinced that defendant had acted under the influence of drugs and/or alcohol. It appears from the record that the evidence did not support defendant's contention and that there was an abundance of evidence upon which the jury based its finding.
One expert witness, a pharmacist, testified that the drug which defendant allegedly took works as a depressant and would have made the defendant much less aggressive and very sleepy. Such testimony is inconsistent with defendant's contention that due to the drugs he had taken he lost control of himself when a fight broke out between he and Broussard. Several other witnesses testified that defendant did not appear to have been under the influence of drugs or alcohol both shortly before the crime and shortly thereafter.
Additionally, the forensic pathologist's expert testimony clearly established that the first wounds inflicted upon Todd Broussard were in his back. The pathologist appeared to be certain of the sequence of the wounds and certain that those inflicted in Todd's back were the first wounds. The pathologist also testified that there were no "defense wounds" on the victim's hands or forearms or anywhere on his body. This further indicated that the victim was not attacking or approaching defendant head on as defendant asserted. Moreover, even the defendant's own testimony belies his assertion of self-defense. Defendant testified that after he wrestled the knife from Todd he tried to back off and give Todd an opportunity to leave, but earlier, defendant testified that as they wrestled over the knife he threw Todd down on the ground and just kept stabbing him. Altogether the defendant stabbed Broussard fourteen times, two wounds having apparently been inflicted post-mortem. Thus it appears that the facts are completely inconsistent with self-defense.
*1124 Additionally, the evidence appears to strongly support a finding that defendant did indeed act with the specific intent to kill or inflict great bodily harm upon Todd Broussard. The severity and number of wounds themselves allow for no other conclusion.
Specific intent is an ultimate legal conclusion to be resolved by the factfinder. State v. Graham, 420 So.2d 1126 (La.1982). Although intent is a question of fact it need not be proven as a fact; but may, instead be inferred from circumstances of transactions and actions of the accused. La.R.S. 15:445; State v. Fuller, 414 So.2d 306 (La.1982); State v. McDermitt, 406 So.2d 195 (La.1981); In Interest of Franklin, 399 So.2d 671 (La.App. 1st Cir. 1981). The evidence supported the jury's finding of guilty as charged.
For the reasons stated above this assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 6 AND 7:
Through these assignments the defendant argues that the trial court erred in refusing to admit testimony and exhibits of Psychological Stress Evaluation test results and results of hypnosis; and in failing to view a videotape of the hypnosis of defendant which was introduced into evidence.
The defendant has not briefed assignment number seven regarding the failure of the trial judge to view the videotape of defendant under hypnotic interrogation, nor has defendant offered any argument in support of this assignment. Assignment number seven is therefore considered abandoned.[5]
The defendant asserts that the trial judge erred in refusing to admit testimony and exhibits of the results of Psychological Stress Evaluation (P.S.E.) tests performed on defendant as well as the results of hypnotic interrogations performed on defendant.
Both the P.S.E. tests and hypnosis results were offered to the court in an effort to prove that defendant's new version of the circumstances surrounding the death of Todd Broussard was the truth. At a hearing on a motion for a new trial, following defendant's conviction, but prior to sentencing, the defendant claimed that he had perjured himself before the trial court. The defendant asserts that he did not kill Todd Broussard but that one Hansel Lancon actually stabbed Broussard to death and then forced the defendant to stab Todd once so as to implicate defendant. Lancon allegedly threatened defendant and his family if defendant ever told the truth about how Broussard died. The defendant told authorities that the homicide had not occurred where the body was found but that Lancon had placed the body in the trunk of his car and dumped it on the empty lot where it was found. A thorough search of Lancon's car disclosed no evidence of defendant's accusation. No traces of blood were found in the trunk of Lancon's car and the trunk did not appear to have been recently cleaned. Lancon testified at the hearing on the motion for new trial and denied any knowledge of or involvement in the death of Todd Broussard. It is apparent from the record that the trial judge believed his testimony.
Thus the only "proof" defendant could offer to demonstrate that he was now telling the truth of what had happened were the results of the P.S.E. tests and hypnosis. The trial judge allowed defendant to introduce all testimony and evidence regarding these procedures under proffer of proof. After defendant completed his evidence under a proffer of proof, the trial judge was apparently not convinced of the accuracy or reliability of these procedures and therefore refused to accept them into evidence and refused to grant the motion for new trial based on this evidence.
The record demonstrates that the examiner who performed the P.S.E. tests had never performed such a test on a *1125 convicted person before and in fact was inexperienced at administering the test. The examiner admitted that he incorrectly performed one test and that he had to call in his instructor to aid him. Thus it does not appear that the trial judge abused his broad discretion in refusing to accept the results of the P.S.E. tests as credible evidence. The judge gave the defendant ample opportunity to demonstrate the reliability of these tests. The testimony reflects that defendant failed to make such a demonstration. While the Louisiana Supreme Court in State v. Catanese, 368 So.2d 975 (La.1979) reasoned that lie detector and P.S.E.[6] tests were admissible in post trial proceedings, the determination of their admissibility and reliability in such proceedings is left strictly to the discretion of the trial judge.
"Consequently, the reasons for excluding polygraph evidence in criminal trials are not necessarily compelling in post trial proceedings. This avenue of admissibility, therefore, should be open, within the discretion of the trial judge, whenever the evidence is reliable and will aid in a decision." State v. Catanese, supra at 983.
The trial judge in the present proceedings went to great lengths in order to determine the reliability of the test results offered as proof that defendant's new story was the truth. In questioning the hypnotherapist the judge asked if a person could lie under hypnosis, the hypnotherapist answered "yes sir, they can." The judge also asked the hypnotherapist:
"Q. If a person lies under oath to avoid criminal responsibility, is he a likely candidate to lie under hypnosis.
A. Yes."
Thus it is clear from the record that the judge was well founded in his conclusion that the P.S.E. tests and the results of the hypnotic interrogation were unreliable and not admissible into evidence. There appears to have been no abuse of the trial judge's discretion.
For the reasons as stated above, these assignments are without merit.

ASSIGNMENT OF ERROR NO. 8:
Defendant argues through this assignment that the trial court erred in denying the motion for new trial on the basis of newly discovered evidence and in order to serve the ends of justice.
Defendant asserts that the butcher knife which was used to stab Todd Broussard to death was the same knife as the one found in the ashes of a home which had burned two days after the death of Broussard. This was not newly discovered evidence as contemplated under La.C.Cr.P. Art. 854 as the trial court, during the trial on the merits, refused to accept this same knife into evidence. The court had then ruled that the defendant failed to establish that this knife was in fact the murder weapon. Thus, the knife cannot be said to be "newly discovered evidence" or evidence unavailable at the original trial.
The Code of Criminal Procedure states in pertinent part the grounds for a new trial:
"The court, on motion of the defendant shall grant a new trial whenever: ... (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty; ..." La.C.Cr.P. Art. 851(3).
It does not appear that the results of the P.S.E. tests or of the hypnosis could be considered newly discovered evidence unavailable at the original trial. Defendant attempted at trial to demonstrate to the jury that he either acted in self-defense or under the influence of alcohol. The jury was not persuaded that such was the truth. The fact that defendant created a new version of Todd's death, which still implicated defendant as a principal, and which version is unsupported by any new *1126 evidence unavailable at trial, does not equate to "newly discovered evidence" which would support a motion for a new trial. The P.S.E. and hypnosis tests could very well have been conducted on defendant during the original proceedings. Moreover, as the results of these tests were ruled inadmissible, there was no other "newly discovered evidence" or evidence of any kind upon which to base the decision to order a new trial. The only testimony or evidence upon which the trial judge could have based a decision to grant the motion was defendant's own self-serving testimony. As the trial judge noted, the defendant openly admitted lying before the jury and was not now worthy of belief. Moreover the judge noted that even if defendant were not telling the truth, his new version does no more than admit to being a principal in the killing of Todd Broussard. Therefore there would be no change in the verdict of guilty under Louisiana law.
The defendant also alleges that the "ends of justice" require the trial judge grant his motion for new trial. The record does not support defendant's contention that an injustice was done by convicting him of the crime charged. The record does however offer substantial evidence of defendant's guilt. Additionally, the denial of a motion for new trial requested on this ground presents nothing for appellate review. State v. Toomer, 395 So.2d 1320 (La.1981).
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded. La.C.Cr.P. art. 851. State v. Vinet, 352 So.2d 684 (La.1977).
For the reasons stated above, this assignment is without merit.
For the above and foregoing reasons the conviction and sentence of the defendant is affirmed.
AFFIRMED.
NOTES
[1] State of Louisiana v. Jack Segura, 457 So.2d 7 (La.1984).
[2] Assignments of error which are not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Crawford, 441 So.2d 813 (La.App. 3rd Cir.1983).
[3] Assignments of error which are not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Crawford, 441 So.2d 813 (La.App. 3rd Cir.1983).
[4] "Although reviewing courts are obliged to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of appellate courts to nothing more than "second guessing" the triers of fact. See my concurring opinions in State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983); State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983); and State v. Bryan, 454 So.2d 1297 (La.App. 3rd Cir.1984).
[5] Assignments of error which are not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Crawford, 441 So.2d 813 (La.App. 3rd Cir.1983).
[6] State v. Thompson, 381 So.2d 823 (La.1980). Supreme Court held that Catanese was applicable to P.S.E. tests as much as to lie detector tests.